Curia, per Wardlaw, J.
The Act of 1791, which authorized proceedings for the partition of intestates’s estates, to be had in either the Court of Common Pleas or the Court of Equity, directs that where it shall appear to be more for the interests of all parties, the Court shall order a sale, on such credit and terms as shall seem right, and that the property sold shall stand pledged for the payment of the purchase money: but as to the officer who shall sell, and the duties which shall devolve upon him, nothing is said in the Act, but all is left to the orders and practice of the Court. The sheriff is the executive officer of the Court of Common Pleas ; and when in that Court an order for sale on credit has been made, and a copy thereof has been lodged in the sheriff’s office, or other sufficient notice given to the sheriff, he is bound to execute the order — not only by selling but by taking bond payable to himself officially, with such securities as may have been required by1 the order. What more ought the sheriff to do ?
In the case of Smith v. Smith, upon'a question concerning the fees the sheriff was entitled to, Judge Johnson arguendo said, “ The receipt and payment over of the money, constitutes no part of the sheriff’s official'duty. All that the law requires of him, is to obey the order directing the sale, and to return to the Court his proceedings thereon: then his official functions end.” In conformity with the course here indicated, and with the practice in equity, it is safe, and renders proceedings symmetrical, for the sheriff to return to the Court, at the first term after his sale, his proceedings under every order for sale, and to obtain from the Court an order for delivery of the bonds, or for collection and payment of the money into Court, or for collection and distribution of the money, or such other order as may be desired by the parties and thought expedient by the Court. Where some of the distributees have received their shares in part by land assigned to them, or some have received more than their proper shares, and are required to refund excesses which are to be distributed, or wherever there is any difficulty in the distribution, or uncertainly in the persons to whom money should be paid, there is especial propriety in the sheriff’s making a return, in order that calculations may be made by a proper officer, and that all doubts may be removed by an order of Court. But in the case oí Pitts v. Wicker, involving a *83 question as to the marital rights of a husband, in portion of a bond which a sheriff had taken under order for sale in partition, whilst payments which had been made to the sheriff are recognized as proper, it is said by Judge Butler, “ The sheriff, like any other obligee, having the legal title of the bond in him, could demand and receive the money secured by it, and hold it subject to the control and direction of the Court. He might have collected and paid the money into Court, and asked an order for its distribution.” In the case of Hood v. Archer, also concerning the marital rights, money had been paid to the sheriff, and his receipt of it was treated as a thing in regular course. The 6 section of the Sheriff’s Act of 1839, under the head Sale Book, manifestly contera-plates not only the taking of bond with sureties, by a sheriff, but his keeping of “ money bonds.” The usage which has long prevailed, is for the sheriff to collect the bonds and distribute the proceeds, where the mode of distribution has been properly pointed out in the proceedings. In the case now before us, the order of sale directs certain tracts of land to be sold by the sheriff, and that “ the proceeds of this sale, with the excesses, &c. be paid over — one-third to Elizabeth Black, and the other two-thirds equally divided between the eight children of John B. Black, deceased.” This seems to be sufficient authority for the sheriff to collect and distribute. The money which he has collected is “ money which came to his hands as sheriff,” according to the terms of the 21st section of the Sheriff’s Act aforesaid; and for his failure to pay it upon demand to the persons entitled to it, his sureties are answerable under his official bond. Prom a statement oí the sheriff’s receipts and payments, which has been exhibited in this Court, it seems probable that the argument urged on the circuit, (to show that the balance remaining in the hands of the late sheriff Ramey, is part of the second instal-ments of the bonds,) is not sound, and that really that balance consists entirely of the third instalment of Young’s bond, received by the sheriff a year before it was due. But it can make no difference.. It was the right of the obligor of the bond, to delay payment ’till the appointed day; but if he chose to waive that right, the sheriff, as obligee and holder of the bond, could receive payment; and after the sheriff’s receipt of the money honestly paid, and delivery of the bond, alL recourse, either to the obligor or the land, was lost to the distributees. Any unfairness or collusion between the obli-gor and the sheriff, might have made a case in which some remedy against the obligor would still remain to the distribu-tees : but it is not for the sheriff or his sureties to suggest or to prove such a case in defence of a charge of official delinquency made against him. According to the case of Lowndes v. Pinckney, in the Court of Errors, a suitor shall not be *84 driven from his action on the official bond to some other difficult remedy, where there has been neglect of official duty by an officer, for the faithful discharge of whose duties the sureties have covenanted. By delivering the bond to the ob-ligor, the sheriff rendered it impossible for himself to comply with the duty of turning it over to his successor, according to the 7th section of the Sheriff's Act aforesaid: and the neglect of that duty, independent of his receipt of the money, makes his sureties liable for the value of the bond, after deducting therefrom the payments that have been made by the sheriff. In like manner, too, under the breaches assigned, of not taking bond, and not turning over bonds, money received by the sheriff and not paid by him, (although the bond upon which it was received and credited, has been turned over,) may be recovered just as if, in violation of his duty, he had taken no bond for so much as his payments are deficient.— The effect is the same, indeed is worse, for if no bond had been taken, recourse might be had to the obligor and the land : the liability, then, should be the same too.
The Court is of opinion that the verdict is right, and the motion is dismissed.
The whole court concurred.
Motion refused!,